HEARD NOVEMBER TERM, 1877.

ARNOLD *vs.* McKELLAR.

The next regular annual session is the "next meeting" of the General Assembly, in the sense of the term as used in Art. III, § 22, of the Constitution.

A Bill sent to the Governor on the last day of the first session of the General Assembly and returned by him approved on the first day of the next regular annual session becomes a law, although in the meantime an extra session had been held.

Where there are two judgments against the same party, the eldest of which is a lien on a tract of land, and the Sheriff having endorsed a levy thereof on both executions, and sells under the junior, the sale will be referred to the eldest.

BEFORE COOKE, J., AT ABBEVILLE, JANUARY TERM, 1877.

This was an action by Francis Arnold against Peter McKellar to recover the possession of real estate.

The facts appear in the following statement prepared and signed by counsel:

The plaintiff, Francis Arnold, purchased these lands at Sheriff's sale, as the property of William P. McKellar, and brought this action to recover possession of them against Peter McKellar, the uncle of William P. McKellar, who claimed the lands under a deed from the judgment debtor, William P. McKellar, to him.

William P. McKellar, the judgment debtor, owned the lands.

August 27, 1875, he conveyed them to his uncle Peter, and left the State September 7, 1875. His deed to Peter expressed the consideration of one thousand dollars, but Peter McKellar swore that the consideration was not money but a payment on a debt of eighteen hundred dollars which William P. owed him. When William P. made the deed to Peter there was in the office against him a judgment of L. D. Merriman for $219, which had been entered up January 26, 1874, and execution issued same date returnable by its terms "in sixty days after its receipt." The only return of this execution was to May Term of the Court, 1875. No summons to make it a lien was served on William P. McKellar by judgment creditor L. D. Merriman, as he claimed that the judgment was rendered after the amendment to the Code and had a lien. When William P. McKellar left the State, Francis Arnold had a suit pending against him, which went into judgment 18th October, 1875, for $227.05.

The attorney of Francis Arnold gave to the Sheriff written instructions to levy and sell the lands in dispute as the property of William P. McKellar. The Sheriff levied on the land on the 8th of November, 1875, endorsing a levy as of same date on both the execution of L. D. Merriman and Francis Arnold, and advertised the lands for sale "at the suit of Francis Arnold," and sold them sale day in December, 1875. At the sale the attorney of Peter McKellar forbid the sale, and the Sheriff, by direction of both the attorney of Merriman and Arnold, announced that the lands were sold under the judgment of "Arnold and others for the benefit of creditors," giving an opinion that the purchaser would take good title.

Francis Arnold became the purchaser for fifty dollars and received Sheriff's titles conveying the lands "at the suit of Francis Arnold and others." Peter McKellar refused to deliver possession to the purchaser, who brought this action. He claimed a recovery on two grounds:

*First.* That the Sheriff's deed conveyed good title as against Peter McKellar, even if the conveyance to him (August 27) was *bona fide*, because the Sheriff sold under both judgments, and that of Merriman was older than said conveyance.

*Second.* But, if that was not so, the deed of William P. McKellar to his uncle Peter was voluntary, pretensive and fraudulent, to enable William P. to leave the State and defraud his creditors, and therefore void as against creditors.

Without going to the jury upon the second ground, His Honor the presiding Judge charged the jury, as matter of law, that the plaintiff was entitled to recover upon the first ground. He held that the judgment of Merriman had a lien from its entry; that the objection to the execution, which by its terms was returnable " within sixty days after its receipt," was technical and did not affect the judgment; that the Sheriff's sale was referable to both judgments, and the purchaser's title good as against Peter McKeller, and directed the jury to find for the plaintiff.

The defendant moved for a new trial on the following grounds:

I. That the judgment of the plaintiff, Francis Arnold, against William P. McKellar, being subsequent to the conveyance of the land by William P. McKellar to the defendant, Peter McKellar, gave to the plaintiff, Francis Arnold, no lien on the said land as against the defendant, Peter McKellar, and the sale thereof under said judgment was null and void.

II. That there was no legal sale under the judgment of L. D. Merriman, because there was no publication of the levy and sale thereof by the Sheriff as required by law.

III. That if publication had been made of the levy and sale under the execution of L. D. Merriman, the said execution had not been returned " within sixty days after its receipt," nor to each successive term of the Court, as provided by law.

IV. That the Act of 25th of November, 1873, amending the Code of Procedure, is null and void, and, therefore, the judgment of L. D. Merriman created no lien on the land at the date of the conveyance to the defendant, Peter McKellar.

V. That, under the Act of 1875, the judgment of L. D. Merriman did not create a lien on said land, because there was no "summons served on the judgment debtor, William P. McKellar, as provided by said Act, and the conveyance to the defendant, Peter McKellar, was, therefore, good as against said judgment.

The Circuit Judge refused a new trial, and the defendant appealed to the Supreme Court for a new trial.

*Lee & Blake,* for appellant:

The appellant claims title under a *bona fide* deed from W. P. McKellar, executed 27th of August, 1875, when there was no lien on the land in controversy.

I. *Appellant's deed is valid,* because at the time of the conveyance to the appellant L. D. Merriman's judgment entered up January 26th, 1874, was the only existing judgment, and had no lien on the land for (3) three reasons :

1. Because the Act of 1873 amending the Code as to the lien of judgments, and providing for such lien, was *null and void,* the constitutional requirements to it becoming a law having been disregarded in its passage, as appears from the following statement :

The Act was passed on the 26th of February, 1873. The Legislature adjourned the next day and reassembled on the 21st October, 1873; in the meantime the Governor retained the Act, and kept possession of the same until the 25th November, 1873, when he returned it to the General Assembly, having failed to do so within two days of its reassembling, as required by the Constitution.— *Vide* Journals of respective dates; Constitution of South Carolina, Art. III, § 22.

2. Because there had been no service of summons under the Act of March, 1875, which provided this mode of creating a lien upon existing judgments.—Act 8th March, 1875, 15 Stats., 871.

3. Because there had been no levy under Merriman's judgment at the time of conveyance to appellant.—§ 314, Code of Procedure.

II. The respondent's deed from the Sheriff is void for two reasons :

1. Because L. D. Merriman's execution, under which the land is claimed to have been sold, had lost its active energy, the sixty days required by the Code for its return having expired. Section 315, Code of Procedure, directs that "the execution shall be returnable within sixty days after its receipt by the officer to the Clerk with whom the record of judgment is filed." "Every execution has a certain day for its return, and every levy under it must be within the period fixed for such return, as the authority under it then ceases, and to revive such authority the execution must be renewed." *Sims* vs. *Randall,* (2 Bay Rep., 524,) "where Sheriff takes upon him to levy upon and sell, by virtue of an execution, *after* the time fixed for its return had expired, and to give title deeds for the land, such deeds are void."—*Sims* vs. *Randall,* 2 Bay, 524; *Jenkins* vs.

*Mayrant*, 3 McCord, 560; *Toomer* vs. *Purkey*, 1 Mills Con. Rep., 158. Lands were not subject to sale under execution at common law. The provision of the law on this subject is a statutory one, and the requirements of the statute relating thereto cannot be disregarded as a mere technicality.

2. Because there was no valid publication of sale under Merriman's judgment. "The Sheriff of every County in this State shall, before he exposes any lands or tenements which he may be directed to sell by virtue of any execution or mortgage, publicly advertise the same three weeks immediately previous to the sale day or days on which he means to expose the same for sale."—Rev. Stat., Chap. XCV, § 5. An announcement by the Sheriff from the block at the time of sale is not a legal publication.

" If the Sheriff advertise under one execution only, he can sell upon that only."—*Mascraft* vs. *Van Antwerp*, 3 Cow., N. Y. Rep., 334. "Sales can only be made under the executions advertised."— *Husted* vs. *Dakin*, 17 Abb., 137. "The Sheriff in selling property under execution only acts by statutory authority, which must be strictly pursued."—*Id.*

*McGowan*, contra :

*First.* The judgment of Merriman was rendered January 26, 1874, in open Court, under Act amending the Code November 25, 1873, *and had a lien on the lands.* That Act not null and void.

1. The Act was ratified February 26, 1873, the last day of that session.—Senate Journal 1872–73, p. 691.

2. Extra session called October 21, 1873, which attended to the special purpose for which it was called and adjourned *sine die* November 24, 1873.—House Journal, Special Session, p. 180.

3. Regular annual constitutional session commenced November 25, 1873, *and on that day* the Act returned approved.—15 Stat., § 14, p. 498.

This was within two days—"unless the General Assembly by their adjournment prevent its return, in which case it shall not have such force and effect *unless returned within two days after their next meeting.*"—Const., Art. III, § 22.

"Next meeting" means next *regular* meeting provided for by the instrument being construed. The provision for regular meetings of the Legislature being *in pari materia* should be incorporated in this sentence.—Const., Art. II, § 12.

But special provision authorizing the call of an extra session should not be incorporated. It is like a provision allowing an appeal, which is not to be so construed.—Dwarris on Statutes, 706; *Rex* vs. *Justices of Surry*, 2 T. R., 504; Const., Art. III, § 16 and § 22.

*Second.* The judgments of Merriman and Arnold being in existence and having lien on the land, the levy and sale by the Sheriff under one execution enough to legalize the sale, which *is referable to both judgments.*— *Vance & Davis* vs. *Reed & Young*, 2 Speer, 90; *McElwee* vs. *Sutton*, 2 Bail., 361; *Magwood* vs. *Legge*, Harper, 116; *Maverick* vs. *Austin*, 1 Bail., 59.

1. The defendant says the Sheriff did not levy and advertise under the execution of Merriman. The fact is the levy was entered on that execution the same day. But if he had not done so—if that execution were irregular or under " wait orders "—yet the execution of Arnold was enough to make the levy and sale for all, and, the sale being made, Merriman's judgment is " entitled to the proceeds of sale and not to a right to resell the land."— *Gist* vs. *McJunkin*, 1 McM., 342; *The State* vs. *Laval*, 4 McC., 336.

2. Merriman don't object to the sale. He concurred in it and claims the proceeds of sale. Third persons can make no objection to irregularity. This mere irregularity, execution according to form used before amendment of law.—*Barklay* vs. *Scriven*, 1 N. & McC., 408; *Reynolds* vs. *Corp*, 3 Caine's R., 273; *Henry* vs. *Fergerson*, 1 Bail., 512; *Guignard* vs. *Glover*, Harper, 457.

3. The purchaser is not required to look into the regularity of proceedings.— *Turner* vs. *McCrea*, 1 N. & McC., 12; *Williman* vs. *Farrow*, 1 Bail., 619; 1 Hill, 249; *Henry* vs. *Fergerson*, 1 Bail., 512.

" The execution under which the sale is made need not be described in the advertisement of sale. The notice is sufficient if it states that the sale is to be pursuant to an execution or executions."—4 Waite's Pr., 76; *Husted* vs. *Dakin*, 17 Abb., 137.

*Third.* The sale was made under the execution of " Francis Arnold and others." This appears by the title executed to purchaser. That estops the defendant from giving parol evidence to contradict the written deed of Sheriff.—*Jackson* vs. *Pratt*, 10 John., 381; *Vanderhyden* vs. *Young*, 11 John., 151; *Jackson* vs. *Vanderhyden*, 17 John., 167; *Jackson* vs. *Sternberg*, 20 John., 51; *Webb* vs. *Roberts*, 7 Wend., 83.

" The Sheriff's deed is valid so long as there was an existing and sufficient authority to the Sheriff to warrant the sale."—Kent in *Martin* vs. *Pratt*, 10 John.

1. When the Sheriff makes an official sale the purchaser can't look into the proceedings under which he sells, and his title is good if there is in existence any authority to support the sale. Property would sell for nothing at such sales if the purchaser became an insurer and warranter that the whole proceeding was regular.

2. Besides the recitals of the deeds, the fact is that the Sheriff announced, and the attorneys for both Arnold and Merriman announced, before the sale that the land was sold under the judgments of "Arnold and others."

March 18, 1878. The opinion of the Court was delivered by

HASKELL, A. J. The principal question in this case is the validity of "An Act to alter and amend the Code of Procedure, being Title V, Part III, of the General Statutes," approved November 25, 1873.

The Bill was ratified 26th February, 1873, but it could not become a law until it had been presented to the Governor.—Section 22, Article III, of the Constitution. If he approve it in the time, or if it be passed over his veto in the manner therein prescribed, it becomes a law. But, says this Section: "If a Bill or Joint Resolution shall not be returned by the Governor within three days after it shall have been presented to him, Sundays excepted, it shall have the same force and effect as if he had signed it, unless the General Assembly, by their adjournment, prevent its return, in which case it shall not have such force and effect unless returned within two days after their next meeting."

The General Assembly adjourned the next day, 27th February, 1873, and the Bill had not been returned by the Governor.

Under Section 16, Article III, of the Constitution, the Governor did "in extraordinary occasion convene the General Assembly to meet on 21st October, 1873." That body assembled and continued to sit until 24th November, 1873, on which day it adjourned *sine die*, and the Governor had not returned the Bill.

On the 25th November, 1873, " the session of the General Assembly," in obedience to Section 12 of Article II of the Constitution, was convened at the seat of government at the annual period desig-

nated in the Constitution, and on that day the Bill was returned by
the Governor approved. Such are the facts as submitted. If the
regular annual meeting be that which is intended by the words
"next meeting" in Section 22, Article III, of the Constitution, then
the Bill became law and is of force. If, on the other hand, the
special or extra session called by the Governor, beginning in Octo-
ber, 1873, be the "next meeting," according to the meaning and
intent of the Constitution, then the Bill was not duly returned
within the two days prescribed, failed to become a law, and acquired
no force from the subsequent approval and return.

The Court is of opinion that the next regular annual session is
the "next meeting," in the sense in which those words are used in
Section 22, Article III, of the Constitution, and will endeavor briefly
to state its conclusion.

Article II of the Constitution frames the legislative department
of the government and prescribes the steps to be taken for the
enactment of laws. Article III relates to the executive depart-
ment. Section 22 of Article III confers and regulates the quali-
fied negative power of the Governor and makes it a portion of the
legislating branch of the government. In the exercise of this func-
tion the Governor acts purely in a legislative capacity, and, there-
fore, Section 22 of Article III belongs properly to Article II,
which is devoted to the legislative department, and should be con-
sidered and construed as if it had occurred therein.

This view is strengthened by the fact that the analogous or veto
Section in the Constitution of the United States is made part of the
legislative department, Article I, and does not occupy a place in
Article II, which declares and defines the executive powers. This
Section will, for this reason, be regarded, for purposes of construc-
tion, as if it were Section 22 of Article II, instead of Article III,
and, as may be observed, it naturally follows Section 21 of Article
II. The consequence is that the words "next meeting" mean the
same as they would have signified had they occurred in Article II
and preceding any provision for extra session. The time at which
the session of the General Assembly is to be held is a period fixed
by the Constitution and is the annual commencement of a political
period in the life of the State.

"The meeting of the General Assembly" is the generic term
which distinguishes this recurring event in the existence of the gov-

ernment, and, when used, is construed to mean the regular assemblage of that body as fixed by the Constitution, unless the contrary is plainly indicated by the context. It does not appear to be so in the present instance. The extra session of the Legislature is meant to occur only on "extraordinary occasions," and, obviously, the attention of that body, and of the Governor who convened it, should be devoted to the unexpected causes which had necessitated such a measure. The extra session is, by its nature, a rare contingency, is unforeseen, has no connection with the ordinary course of legislation, and its interference therewith is in conflict with that scheme of the Constitution which provides that the interval between the annual sessions shall elapse before the enactment of new or the repeal of old laws. And so important is this consideration that in several of the States the sessions have been made biennial for the better prevention of hasty legislation.

The validity of the Act of 1873–74 (15 Stat., 495,) being sustained, the Merriman judgment had a lien upon the land of McKellar at the time it was sold. An execution issued upon that judgment was in the hands of the Sheriff at the time he levied and sold by virtue of the Arnold or junior execution, and the levy was entered upon both at the same date. The failure on the part of the Sheriff to make the returns as provided by law, if so, might subject him to rule, (15 Gen. Stat., § 16, p. 500,) but could not affect the active energy of the execution, which had run but a short portion of the period of five years from the time of its lodgment.— *Ibid*, p. 499, § 15.

The Sheriff could unquestionably have made the sale under Merriman's execution. This meets the very points made in the dissenting opinion of Evans, J., and concurred in by Wardlaw, J., in the case of *Vance & Davis* vs. *Red & Young*, (2 Speer, 90,) for in that case the dissenting Judges stood upon the point that the Sheriff did not have in his office a senior execution which empowered him to sell. But in the opinion the Court settled the whole question, saying: "It is of no consequence under what named execution or judgment the Sheriff sells a defendant's property, the sale is in virtue of all existing liens of the kind, and every execution gives the practical authority to sell until all are satisfied, and the liens are satisfied successively in the order of priority of time; and thus each execution amounts to a *venditione exponas* for all the preceding judgments."—*Ibid*, p. 93.

The Court sees no error in the charge of the Judge in the Court below, nor any reason why a new trial should be granted.

The motion is, therefore, dismissed.

*Willard*, C. J., and *McIver*, A. J., concurred.